IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>APPROXIMATELY $7,049.00, $275.00, )<br>and $54.00 IN U.S. CURRENCY, )<br>)<br>Defendants. ) | Civil No. 4:20-cv-00224<br><br>VERIFIED COMPLAINT FOR<br>FORFEITURE *IN REM* |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.   NATURE OF THE ACTION

1. This is an action to forfeit and condemn specific property to the use and benefit of the United States of America ("Plaintiff") due to its involvement in violations of 21 U.S.C. § 846 (attempt and conspiracy) and § 841(a)(1)(prohibited acts).

2. The United States believes the Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code, and proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of said subchapter.

## II. DEFENDANT *IN REM*

3. The Defendant property is generally described as approximately $7,049.00, $275.00, and $54.00 in U.S. Currency seized on April 2, 2020, in Des Moines, Iowa.

4. The Defendant property is in the custody of the Des Moines Police Department.

## III. JURISDICTION, VENUE, AND PROCEDURAL AUTHORITY

5. This Court has jurisdiction over an action commenced by the United States as Plaintiff, pursuant to 28 U.S.C. § 1345.

6. This Court has original jurisdiction over this action for the recovery or enforcement of a fine, penalty, or forfeiture incurred under an Act of Congress, pursuant to 28 U.S.C. § 1355(a).

7. This Court also has jurisdiction over this action because acts or omissions giving rise to this civil forfeiture occurred in the Southern District of Iowa, therefore, this action may be brought in this District, pursuant to 28 U.S.C. § 1355(b)(1)(A).

8. Venue is proper in this District because this is a civil proceeding for the recovery of a pecuniary fine, penalty, or forfeiture, and is being prosecuted in the District where the action accrues and where the Defendant property is found, as authorized by 28 U.S.C. § 1395(a) and (b).

9. Venue is also generally proper in this District under 28 U.S.C. § 1391(b)(2) because it is where "a substantial part of the events or omissions giving

rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."

10. The general rules for civil forfeiture proceedings are set forth in 18 U.S.C. § 983.

## IV. FACTS

11. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

12. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

13. Schedule I substances have a high potential for abuse, and have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these drugs under medical supervision. 21 U.S.C. § 812(b)(1)(A) – (C). Marijuana is a Schedule I controlled substance.

14. Schedule II substances have a high potential for abuse, but the drugs or substances have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions. Abuse of Schedule II controlled substances may lead to severe psychological or physical dependence 21 U.S.C. § 812(b)(2)(A) – (C). Methamphetamine is a Schedule II controlled substance.

15. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance unless authorized

by law to do so. 21 U.S.C. § 841(a)(1).

16. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions. 21 U.S.C. § 846.

17. It is believed that, or will be after a reasonable opportunity for further investigation and discovery, evidence will show the Defendant property is money furnished, or intended to be furnished, in exchange for a controlled substance, proceeds traceable to such an exchange, and/or money used or intended to be used to facilitate a violation of Subchapter I, Part D, Title 21, United States Code.

18. The Defendant property was seized from the residence and vehicle of Rusty Lee Shiffer in Des Moines, Iowa on April 2, 2020.

19. Prior to April 2, 2020, Shiffer had a history of criminal convictions that include, but are not limited to, the following:

| Date | Arrest/Conviction | Sentence |
|---|---|---|
| 12/05/1990 | Going armed with intent<br><br>FECR051487 (Iowa District Court, Polk County) | 05/10/1991 – 5 years' imprisonment |
| 08/08/1996 | Possession of a Schedule I controlled substance<br><br>(SRCR104617 (Iowa District Court, Polk County) | 11/01/1996 – 1 year probation |
| 12/02/1996 | Possession of a Schedule II controlled substance<br><br>(Iowa District Court, Polk County) | 07/03/1997 – 1 year imprisonment |
| 12/14/2006 | Possession of controlled substance 3rd or subsequent offense (D felony)<br><br>FECR208101 (Iowa District Court, Polk County) | 4/24/2007 – 5 years' prison |
| 03/17/2010 | Possession of drug paraphernalia<br><br>SMAC311785 (Iowa District Court, Polk County) | 5/19/2010 – 30 days' jail |

| Date | Arrest/Conviction | Sentence |
|---|---|---|
| 03/03/2011 | Possession of controlled substance 3rd or subsequent offense (D felony)<br><br>FECR244380 (Iowa District Court, Polk County) | 7/28/2011 – 5 years' prison |
| 05/05/2011 | Controlled substance violation (C Felony)<br><br>FECR246206 (Iowa District Court, Polk County | 7/28/2011 – 10 years' prison |
| 12/05/2013 | Controlled substance violation (B Felony)<br><br>FECR272168 (Iowa District Court, Polk County) | 3/12/2014 – 40 years' prison |

20. Shiffer has spent time in prison for going armed with intent, driving with a suspended license (multiple times), contributing to the delinquency of a minor, possession of a controlled substance, attempted burglary (second degree), domestic abuse assault with intent, theft (second degree), harassment (multiple times), assault use/display of a weapon, interference with official acts (multiple times), driving while habitually barred, domestic abuse assault without causing injury, possession of a controlled substance (third or subsequent offense), voluntary absence from custody, assault, and for probation/parole revocations. He has been ordered to pay numerous criminal fines, and owes over $10,000 in fines to various Iowa Courts.

21. As a result of Shiffer's significant periods of incarceration, and his inability to legally drive for much of his adult life, he has had little to no opportunity to earn and/or save significant income.

22. From approximately 2011 to 2020, Shiffer spent most of his life in state prison for a state drug crime, and for violating his parole. He was not able to maintain stable employment and earn significant income during this time period.

23. Shiffer has long been involved, by his own admission, in the illegal controlled substance marketplace.

24. Around 10:25 a.m. on April 2, 2020, members of the Iowa Fifth Judicial District Probation & Parole Fugitive Unit went to 701 Hartford Ave., Apt. 3, in Des Moines to look for a wanted man, MA.

25. While members of the Fugitive Unit tried to make contact with anyone in Apt. 3, the door in the next unit opened and Shiffer stepped out.

26. Shiffer was known by one of the officers to be on active parole at that address.

27. Shiffer was startled when an officer approached him and appeared nervous when the officers asked him about the wanted man they were seeking.

28. When Shiffer was told the officers were going to enter his apartment to conduct a home visit, which they were authorized to perform, Shiffer abruptly walked into his apartment before he could be patted down to ensure officer safety.

29. One of the officers followed Shiffer inside and saw him lift up a mattress and throw something under it.

30. At that point, another man—later identified as BJG—emerged from the bathroom adjacent to Shiffer's bedroom.

31. One officer patted Shiffer down and found a plastic bag containing approximately seven grams of methamphetamine in his front left pants' pocket.

32. An officer then lifted up the mattress where he had seen Shiffer conceal something and found a Kel-Tec P-11 9mm pistol (SN: A9250). The gun had a round

in the chamber and three rounds in the magazine.

33. An officer also saw a partially open red Nike bag on Shiffer's bed that contained a large amount of loose cash, specifically $7,049, which is part of the Defendant property.

34. A person's possession of a large amount of cash, particularly when coupled with other evidence of his involvement with illegal drugs, such as illegal controlled substances and drug notes, are common indicia of drug trafficking.

35. At the time, Shiffer knew he was a convicted felon and was legally prohibited from possessing a firearm and ammunition.

36. It is common for drug dealers, and those involved in the illegal controlled substances market, to carry firearms to protect themselves from harm, and to protect their drug money and their illegal drugs from theft.

37. The presence of a firearm near controlled substances typically reflects the firearm is a tool of the trade for a drug dealer.

38. Shiffer had both illegal drugs and drug money in his possession.

39. Based on the discovery of guns, drugs, and a large amount of cash, the Fugitive Unit contacted the Des Moines Police Department for assistance.

40. Des Moines Police responded to the scene and asked Shiffer for permission to search his residence, and he eventually provided verbal content, after declining to sign a written consent form.

41. When Shiffer was asked to provide verbal consent, he initially said no but then said, "I mean, you're gonna get a search warrant anyway. I mean what's the

difference. Go ahead and search it, man. There ain't nothing in there. That stuff, I don't know where it came from. There's several people in and out of that apartment as you know."

42. Shiffer initially lied about living there and said he did not know about anything in the apartment.

43. Shiffer had no reason to lie, unless he was trying to conceal something from law enforcement.

44. At one point, Shiffer commented that he was not trying to go to federal prison for the rest of his life for a gun that was found in a room. Thus, Shiffer knew it was illegal for him to possess a firearm, and he nevertheless elected to do so, notwithstanding the potential consequences.

45. During the lawful search of the apartment, Des Moines Police found the following items:

*Living room*

- A notebook containing drug notes in the top, east drawer of dresser
- Surveillance camera in the top, west dresser drawer
- Two surveillance cameras on the TV stand along the west wall

*Bedroom*

- $7,049 cash in a red bag on top of Shiffer's bed
- A used methamphetamine pipe in the side pocket of the red bag
- A small notebook containing names and addresses in the top dresser drawer
- Pages from a notebook containing names and drug notes in a stand along the east wall
- An address book and drug notes on a shelf along the east wall

46. Approximately $275 was seized from Shiffer's wallet, and approximately $54 was seized from the console of Shiffer's vehicle. These sums are also part of the Defendant property.

47. Drug dealers often keep handwritten notes detailing their business transactions by documenting source and/or customer contact information, documenting specific drugs quantities involved, and even documenting the amount of the transactions they are conducting.

48. If, as Shiffer said, people were frequently coming in and out of his apartment, it would make little to no sense for him to keep legitimately-earned cash in an open bag on his bed, rather than keeping it safely in a bank.

49. After searching the apartment, the police conducted an audio-recorded post-*Miranda* interview of Shiffer, who agreed to the interview and signed a waiver of rights form.

50. Shiffer said he was currently paroled to 701 Hartford Ave., Apt. 2 and had been there for about a couple weeks.

51. Shiffer said he doesn't like how things currently are because he's spent most of his life in prison.

52. Shiffer said he was doing well and going to AA meetings, but he recently "fell off" in the last month or so. Shiffer stated, "I'm a drug addict. I don't have any excuse."

53. Shiffer falsely denied having a gun or taking a gun in the apartment, even though he was seen stashing one.

54. Drug dealers who possess firearms often lie about having one, because there can be severe penalties if convicted for having a firearm as a felon or while dealing drugs.

55. Shiffer said he had been fired by Titan Tire and then laid off by Jensen Builders.

56. When asked about the cash on his bed, Shiffer said he did not know how much cash was in there. Shiffer said he had about $250 in his wallet.

57. Shiffer again claimed he is just a drug addict and buys drugs to get high.

58. Shiffer said he usually smokes methamphetamine, but his PO (Probation Officer) will say he's been dropping clean.

59. When asked how much methamphetamine he had on him, Shiffer falsely denied having any, even though it was found in his pants' pocket. Shiffer then stated, "I'm fucked anyway."

60. The statement "I'm fucked anyway" was an admission by Shiffer that he knew he was caught engaging in criminal activity.

61. When asked if he knows of anyone who has been in his apartment, Shiffer stated he is not going to tell on anyone, commenting, "It's my shit, I'm taking the fucking fall man." Shiffer then again falsely stated the gun is not his and that he has never seen it before.

62. Shiffer then insinuated that the red bag with cash belonged to someone else and alluded to MA (the man the Fugitive Unit was looking for in the next-door apartment). However, Shiffer then again stated he was not going to tell on anyone.

63. Shiffer then went on a rant about not being federally indicted, being a junkie, living in a rat-hole apartment, and not being able to afford the rent because he sticks needles in his arms.

64. Based on Shiffer's statements, the Defendant property either was not his or he did not have the financial wherewithal to have it through legitimate means.

65. Insofar as Shiffer has been in and out of prison, was fired from his two most recent jobs, and said he did not have sufficient money to even pay rent, or for a decent apartment, due to his drug habit, he clearly did not have a legitimate source for the money found on his bed, or for the money found elsewhere during the search.

66. Based on the totality of the evidence, the Defendant property was drug money acquired by Shiffer for dealing controlled substances and/or intended to be used by him, in some manner, to facilitate an illegal federal drug crime.

67. A police officer also conducted an audio-recorded post-*Miranda* interview of BJG, who agreed to the interview and signed a waiver of rights form.

68. BJG said Shiffer called him and asked for a ride home that day.

69. BJG said he was using the bathroom when he heard Shiffer start mumbling things and yelling, "BJ."

70. BJG stated he is the "low man on the totem pole" and is just getting high. BJG said he smokes methamphetamine daily and uses about a gram per day.

71. BJG said he did not know exactly what Shiffer had going on, but he thought Shiffer could deal in ounce quantities of methamphetamine.

72. BJG said he thought Shiffer was getting methamphetamine from Source #1.

73. On May 12, 2020, Shiffer was indicted by a federal grand jury in the U.S. District Court for the Southern District of Iowa, criminal case 4:20-cr-063, for being a felon and unlawful user of a controlled substance in possession of a firearm.

74. At the time Shiffer was charged in federal court, he was serving a state sentence with a scheduled discharge date in 2036.

## V. COUNT ONE
### (FORFEITURE UNDER 21 U.S.C. § 881(a)(6))

75. Plaintiff repeats and realleges each and every allegation set forth above.

76. The government believes the facts pled above prove, by a preponderance of the evidence, that the Defendant property constitutes moneys or other things of value furnished or intended to be furnished in exchange for a controlled substance, were proceeds of, and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841 and § 846 et seq.

77. As a result of the foregoing, the Defendant property is liable to condemnation and to forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(6).

### CLAIM FOR RELIEF

WHEREFORE, the United States prays that the Defendant property be forfeited to the United States and that it be awarded its costs and disbursements in this action and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: /s/ Craig Peyton Gaumer
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9317
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Brady Carney, hereby verify and declare under penalty of perjury that I am a Vice/Narcotics Investigator with the Des Moines Police Department, and that I have read the foregoing Verified Complaint and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and other law enforcement agencies working in this matter, including information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as an Officer with Des Moines Police Department.

Dated: July 13, 2020.

_____
Brady Carney, Vice/Narcotics Investigator
Des Moines Police Department